IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KEVIN T.,[1]                                                       No. 1:21-cv-1563-MO

           Plaintiff,                              OPINION & ORDER

     v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

           Defendant.

MOSMAN, District Judge:

This matter comes before me on Plaintiff Kevin T.'s Complaint [ECF 1] against Defendant Commissioner of the Social Security Administration. For the reasons given below, I AFFIRM the Commissioner's decision and DISMISS this case.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 – OPINION & ORDER

## PROCEDURAL BACKGROUND

In May 2016, Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Tr. 220-35. The Social Security Administration ("SSA") denied his claim initially and upon reconsideration. Tr. 166-80. Plaintiff appeared before Administrative Law Judge ("ALJ") Katherine Weatherly in June 2018. Tr. 29-48. In August 2018, the ALJ issued a decision denying Plaintiff's claims for benefits. Tr. 13-28. Plaintiff filed an appeal, and the Appeals Council denied review. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 21, 2016, the alleged onset date. Tr. 462. At step two, the ALJ determined that Plaintiff had the following severe impairments: major depressive disorder, history of alcohol use disorder, rule-out unspecified personality disorder with dependent features, obesity, mild lumbar spine degenerative disc disease, chronic pain syndrome, and left hip osteoarthritis. Tr. 462. At step three, the ALJ found that Plaintiff's impairments did not meet the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. Tr. 463. The ALJ assessed Plaintiff's residual functional capacity ("RFC"), as follows:

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he can stand for one hour, walk for two hours, and sit for six hours in an eight-hour workday. The claimant must be able to sit and stand as needed while continuing to perform job duties. He will need to use cane to ambulate more than 20 feet. The claimant is capable of frequent bilateral use of the lower extremities. He can occasionally climb stairs and ramps, but should avoid ladders, ropes, and scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. He should avoid workplace hazards, such as unprotected heights or dangerous machinery. He can occasionally operate a motor vehicle. The claimant should have no concentrated exposure to respiratory irritants such as fumes, dusts, gases, humidity, extreme heat or cold, and humidity. The claimant should avoid ambulation over uneven surfaces. He can understand, remember, and carry out

> only simple instructions that can be learned in 30 days or less. He can persist at simple routine tasks, make simple work-related decisions, perform work with few if any changes in the workplace, and no assembly line pace work.

Tr. 465.

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. Tr. 473. At step five, the ALJ found that Plaintiff retained the capacity to perform jobs that exist in significant numbers in the national economy. Tr. 474. The ALJ therefore found Plaintiff not disabled from April 21, 2016, through August 24, 2021. Tr. 475.

## LEGAL STANDARD

Courts must uphold the ALJ's decision if it "was supported by substantial evidence and based on proper legal standards." *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). When "evidence is susceptible of more than one rational interpretation ... the ALJ's conclusion ... must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Errors in the ALJ's decision do not warrant reversal if they are harmless. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).

## DISCUSSION

Plaintiff raises three primary issues with the ALJ's decision. First, he contends that the ALJ unreasonably discounted his symptom testimony without clear and convincing reasons for doing so. Second, Plaintiff argues that the ALJ erred in disregarding the medical opinions of the state agency psychological consultants, resulting in a flawed, incomplete hypothetical to the vocational expert, a residual functional capacity finding that is not supported by substantial

evidence, and ultimately, error at step five. And third, Plaintiff argues the ALJ erred by discounting his mother and son's lay witness statements. I address each issue in turn.

I.   **Subjective Symptom Testimony**

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom evaluation. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (superseded on other grounds). First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotations omitted). Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Id.* (internal quotations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

At the administrative hearing in June 2018, Plaintiff testified that he had not been able to attend regular medical appointments due to transportation issues. Tr. 32-33. His access to medical care had also been impacted by lack of medical insurance; he had been uninsured from 2010 through 2015 or 2016. Tr. 38. He did not drive due to pain. Tr. 35-36. He lived with his mother. Tr. 36. He used Ibuprofen and Tylenol for pain. Tr. 37. He could sit for fifteen to twenty minutes at a time, but he had to constantly change positions. Tr. 40. He used a cane at all times, even at home, to prevent falls. Tr. 40. He testified he had to sleep in a reclined position and spent his days watching television, reading, and talking with his mother. Tr. 40-41. He testified to constant pain. Tr. 41. He did not perform any household chores. Tr. 41-42.

At the remand hearing in July 2021, Plaintiff testified that he was living with his mother and adult son. Tr. 493. He drove once a week, for about fifteen to thirty minutes. Tr. 495. He was able to grocery shop if he used a shopping cart as a walker, but his mother typically did the shopping. Tr. 495. He used a cane due to issues with his left leg. Tr. 496. He needed a cane when standing in one place due to balance issues. Tr. 501. He used the cane with his dominant right hand. Tr. 501, 523. He became unbalanced when using the cane with his nondominant left hand; his left side was weaker than his right. Tr. 523. He was not able to lift or carry anything in the right hand when standing or walking due to use of the cane. Tr. 501. He used the cane when changing positions from sitting to standing. Tr. 501. He typically spent his days alternating between the couch and his bed because of lower back and hip pain. Tr. 497-98. His mother prepared his meals. Tr. 497-98. He was able to stand or sit for about five to ten minutes at a time. Tr. 498. He was most comfortable lying in a reclined position and spent most of the day in this position. Tr. 498, 502. He had difficulty concentrating because of pain. Tr. 505.

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 472. However, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 472. Specifically, the ALJ found Plaintiff's symptom allegations were inconsistent with the objective medical evidence, and treatment history showing both improvement with treatment and conservative treatment.

*A. Objective Medical Evidence*

The ALJ is instructed to evaluate objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence ... is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). Indeed, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022)(emphasis in original); s*ee also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding when the plaintiff's testimony of weight fluctuation was inconsistent with the medical record).

Concerning Plaintiff's testimony about his physical limitations due to back and hip pain, the ALJ reasonably discounted these allegations as inconsistent with the record. Conflict with objective medical evidence is a sufficient basis for discounting a claimaint's testimony. *Smartt v. Kijakazi*, 53 F.4th at 498; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). For example, the ALJ noted that Plaintiff's physical exams were mostly normal, showing Plaintiff in no acute distress, with intact cranial nerves with no sensory deficits, active range of motion in all four extremities with full muscle strength and no tenderness. Tr. 378-79, 382-83, 906-07. Likewise, the

diagnostic imaging results were similarly unremarkable, showing Plaintiff with "mild" abnormalities, including back MRIs that showed a "mild" disc bulge at L5-S1 (Tr. 376-77, 912) and an electrodiagnostic study of his lower extremities that similarly revealed mild and acute radiculopathy. Tr. 386. Evidence of the mildness of Plaintiff's back and hip issues stood in contrast to his testimony from these conditions was more severe. *Compare* Tr. 906-07 *with* Tr. 497-98. Ultimately, the ALJ's decision to discount Plaintiff's testimony about these symptoms was clear, convincing, and supported by substantial evidence.

The ALJ reasonably evaluated Plaintiff's testimony about mental health symptoms of anxiety, difficulty concentrating, and depression, and found they conflicted with the medical record as well. Plaintiff's mental status examinations were as unremarkable as his physical exams, showing Plaintiff as alert, oriented, and cooperative, with good eye contact, intact memory, normal mood, affect, thought content, cognition, and speech, as well as good attention, insight, and judgment. Tr. 379, 382, 907, 945, 985-86. As with his physical symptoms, these generally positive indicators suggested that the mental health symptoms were not as severe as Plaintiff alleged. The medical records the ALJ cited directly undermined Plaintiff's testimony about difficulty concentrating and depression. *See*, *e.g.,* Tr. 505. The ALJ therefore supported his conclusion that Plaintiff's subjective testimony overstated his mental health symptoms with substantial evidence.

      B.    *Improvement with Treatment*

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). If the record shows a claimant's symptoms have improved with treatment, that improvement is "an important indicator of the intensity and persistence of ... symptoms." 20

C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The Ninth Circuit has held that "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017).

The ALJ reasonably concluded that Plaintiff's physical and mental limitations improved with treatment, which undermined his hearing testimony concerning the severity of his symptoms. Despite complaining of significant lower back and hip pain (Tr. 31, 505), treatment records show that Plaintiff's medications were helping, as he reported improved pain control and less reliance on an assistive device for walking. Tr. 446-47. Plaintiff also reported that over-the-counter medications like ibuprofen and Tylenol improved his pain symptoms. Tr. 37, 343, 467, 904-05, 985, 1042, 1052. Likewise, concerning his mental health symptoms, Plaintiff initially reported that his anxiety symptoms were "fairly controlled" after he established care with a mental health counselor. Tr. 924. Three months after attending therapy and taking prescribed medication, Plaintiff's treating mental health provider also noted that his symptoms were "controlled." Tr. 931. Plaintiff further told the consultative examiner that his weekly counseling sessions and Sertraline helped his depression. Tr. 984-85. This is another clear and convincing reason, supported by substantial evidence, and the Court therefore upholds the ALJ's decision to discount Plaintiff's testimony on the basis that his symptoms improved with treatment.

Plaintiff counters that the ALJ erred by cherry-picking testimonial evidence to support the conclusion that he could "stand unassisted for one hour per workday and required use of a cane only when walking more than twenty feet." *See* Pl. Br. at 19-20 (citing Tr. 465). Plaintiff cites *Garrison v. Colvin*, which reminds ALJs that "it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." 759 F.3d 995, 1017 (9th Cir. 2014). Here,

unlike in *Colvin*, the ALJ reviewed the entire record and came to the reasonable conclusion that Plaintiff's improvement with treatment and other objective medical evidence conflicted with the testimony about the severity of his alleged difficulty standing and walking. Tr. 465. Plaintiff cites evidence supporting his need for a cane "at all times," but his arguments are an effort to have this Court re-weigh the evidence, which is not within the scope of this Court's review. *Winans v. Bowen*, 853 F.2d 643, 644 (9th Cir. 1987) (noting that the Court may not "reweigh the evidence [and] substitute [its] own judgment" for the ALJ's). Because the ALJ identified two clear and convincing reasons for discounting Plaintiff's subjective symptom testimony, and those reasons were supported by substantial evidence and have the "power to convince," *Smartt*, 53 F.4th at 499, the Court will not disturb the ALJ's conclusion that Plaintiff's symptoms were not as severe as alleged at the hearing.

## II.     Medical Opinion Evidence

Plaintiff argues the ALJ erred in evaluating the medical opinions of the state agency psychological consultants, Bill Hennings, Ph.D., and Sergiy Barsukov, Psy.D. For claims filed before March 27, 2017 the applicable regulations define medical opinions as "statements from acceptable medical sources that reflect judgements about the nature and severity of [claimants'] impairment(s), including [their] symptoms, diagnosis and prognosis, what [they] can still do despite impairment(s), and [their] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). Regardless of its source, the ALJ is required to consider and explain the weight afforded to every medical opinion in the record using certain factors, such as the amount of relevant evidence that supports the opinion, the quality of the doctor's explanation, the consistency between the opinion and the medical record as a whole, and the doctor's familiarity with the record as a whole. *Id.* §§ 404.1527(c), 416.927(c). After applying the appropriate

factors, the ALJ may reject the medical opinion of a non-examining doctor only "by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

In July 2016, Dr. Hennings reviewed the available medical records and completed a medical questionnaire at the request of the State agency. Tr. 107-09, 113-14. He determined that Plaintiff was moderately limited in his ability to concentrate, but remained capable of: (1) understanding short and simple instructions, and (2) understanding, remembering, and performing simple instructions that can be learned in 30 days or less. Tr. 113-14.

Three months later, Dr. Barsukov reviewed the same medical records and similarly opined that Plaintiff was moderately limited in his ability to maintain concentration, persistence, or pace because of his depressive symptoms. Tr. 141. He then noted that Plaintiff could not consistently understand and remember detailed instructions/tasks on a sustained basis but was capable of: (1) understanding and remembering short and simple instructions and work-like procedures containing one- to two-steps, and (2) working a normal 40-hour workweek with normal breaks. Tr. 146.

The ALJ afforded both opinions "some weight" because neither doctor adequately considered the combined effect of Plaintiff's impairments or the degree to which Plaintiff's pain affected his mental functioning, and they therefore gave an incomplete picture of Plaintiff's work-related limitations. Tr. 472. Plaintiff argues the ALJ erred in failing to apply the regulatory factors to determine what weight to afford these two conflicting opinions. *See Trevizo*, 871 F.3d at 676. Plaintiff also argues that the ALJ erred in failing to explain, with reasons supported by substantial evidence in the record, why he favored Dr. Henning's formulation of Plaintiff's difficulty understanding, remembering, and performing simple instructions over Dr. Barsukov's.

Plaintiff believes this error is harmful because the representative jobs identified at step five of the sequential analysis exceed the limitations in Dr. Barsukov's opinion. Tr. 508. Taking this limitation to understanding, remembering, and carrying out simple instructions that could be learned in thirty days or less into account, the VE identified the representative jobs of food and beverage clerk, Dictionary of Occupational Titles ("DOT") code 209.567-014; credit card clerk, DOT code 205.367-014; and document clerk, DOT code 249.587-018. Tr. 514. The ALJ then adopted this testimony at step five to find Plaintiff capable of performing the identified jobs. Tr. 474.

An ALJ is charged with the duty of resolving conflicts among the opinion evidence, and she did so in this case by giving appropriate weight to the Dr. Henning's opinion over Dr. Barsukov's and supporting that decision with valid reasons. Tr. 472. Ultimately, it is for the ALJ to "decide which medical opinions to credit, " *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008), and an ALJ may do so by evaluating the supportability and consistency of those opinions with the record evidence. 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5). Here, the ALJ reasonably adopted Dr. Henning's assessment that Plaintiff was able to "understand, remember, and perform simple instructions that can be learned in 30 days or less" (Tr. 113-14) as supported by the record and consistent with other record evidence, like consultative examiner Dr. Shields' opinion, which contained mostly unremarkable mental status examination findings and mild functional limitations. Tr. 472.[2] On the other hand, the ALJ reasonably rejected Dr. Barsukov's opinion that Plaintiff able only to "understand and remember simple (1-2 step) instructions/tasks on a sustained basis" because it was inconsistent with the

---

[2] The parties agree that the ALJ imported Dr. Shields' and Dr. Henning's limitations into her hypotheticals posed to the VE. Tr. 508, 465.

record evidence that Plaintiff could understand, remember, and carry out both simple and detailed instructions and that Plaintiff's mild depression would only cause mild limitations in persistence and pace. Tr. 987. The ALJ therefore reasonably considered the consistency and supportability of Dr. Barsukov's opinion when finding it only partially persuasive.

Ultimately, Plaintiff interprets the evidence differently and would prefer that the ALJ adopt the more restrictive limitations set forth in Dr. Barsukov's opinion. But, in the Ninth Circuit, a court upholds an ALJ's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Because the ALJ interpreted the evidence rationally and gave valid reasons supporting her analysis, the Court upholds the ALJ's reasonable evaluation of the non-examining medical source opinions of Dr. Barsukov and Dr. Henning.

### III.   Lay Witness Statements

"Lay testimony as to a claimant's symptoms is competent evidence that the Secretary must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine,* 574 F.3d at 694. But the ALJ is not required "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114, *superseded on other grounds by* 20 C.F.R. § 404.1502(a). If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id*. Additionally, where "lay witness testimony does not

describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id*. at 1117, 1122.

Plaintiff's son reported that Plaintiff was unable to sit or stand for extended periods of time. Tr. 800. Pain affected his sleep. Tr. 801. He needed assistance with dressing and showering. Tr. 801. He did not prepare his own meals because of his limited ability to stand. Tr. 802. His son accompanied him to the grocery store. Tr. 802. Plaintiff's hobbies included watching television. Tr. 804. The only places he went on a regular basis were to the grocery store and to medical appointments. Tr. 804. He could not lift more than ten pounds nor walk more than about ten yards. Tr. 805. He did not handle stress or changes in routine well. Tr. 806. He used a cane to "get up, sit down, and whenever to walk." Tr. 806.

Plaintiff's mother provided evidence regarding Plaintiff's functioning prior to September 30, 2016. Tr. 825. She reported that she lived with Plaintiff during this time and had witnessed a deterioration in his ability to perform activities of daily living. Tr. 825. Plaintiff needed assistance with lower body dressing, lower body bathing and drying off, nail and foot care, care after bowel movements, making meals, and grocery shopping. Tr. 825-26. He used a cane to ambulate short distances and required hands-on assistance for distances greater than fifty feet. Tr. 825. He needed verbal reminders to take his medication. Tr. 825. He could not do household chores. Tr. 826. He was easily distracted. Tr. 826.

The ALJ provided specific, germane reasons to discount the lay witness statements, which largely retread ground covered in Plaintiff's own testimony. The ALJ reasonably assigned "little weight" to the lay testimony because "the level of reliance on others they describe is not supported by the claimant's contemporaneously documented statements regarding living alone."

13 – OPINION & ORDER

Tr. 472-73. And, even if this reason was not sufficiently tied to the lay witness testimony, any error was harmless. An ALJ's failure to provide germane reasons for rejecting lay witness evidence is harmless where an ALJ properly rejects a claimant's testimony and the lay witness evidence describes the same limitations. *Molina*, 674 F.3d at 1122. Here, the ALJ's clear and convincing reasons for discounting Plaintiff's self-reports, discussed above, apply equally well to the similar statements from Plaintiff's son and mother. *Compare* Tr. 32-42, 492-505 (Plaintiff's testimony) *with* Tr. 800-06, 825-26, 328-336 (Plaintiff's son's and mother's third party function reports). Any error in analyzing these statements was therefore harmless.

## CONCLUSION

For the reasons given above, I AFFIRM the Commissioner's decision and DISMISS this case with prejudice.

IT IS SO ORDERED.

DATED:     8/9/2023              .

*Michael W. Mosman*
MICHAEL W. MOSMAN
United States District Judge